UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**New Angle LLC**

    v.                                                       Case No. 22-cv-113-PB

                                                         Opinion No. 2022 DNH 116

**IQAir North America, Inc.**

## MEMORANDUM AND ORDER

New Angle LLC and IQAir North America, Inc. are engaged in a corporate quarrel involving dueling intellectual property and tortious interference with economic relationships claims. They are fighting their battle on two fronts: New Angle's suit before me and another brought by IQAir in the Central District of California. IQAir's argument here is that this court lacks personal jurisdiction to consider New Angle's claims. If IQAir is correct, the parties agree that I should transfer the case to the Central District of California, where it is undisputed that the court has personal jurisdiction.[1]

---

[1] 28 U.S.C. § 1406(a) permits a court to transfer rather than dismiss a case in which the court lacks personal jurisdiction, if the case could have been brought in the transferee court and the "interest of justice" supports the transfer. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (recognizing that a court can transfer a case under § 1406(a) whether or not it has personal jurisdiction over the defendant).

I. **BACKGROUND**

IQAir is a global manufacturer and distributor of air purification and filtration products. See Compl., Doc. No. 1-1, ¶ 8. It is incorporated and headquartered in California. See Def.'s Mot., Doc. No. 5-1, 13. New Angle, operating out of New Hampshire, manufactures aftermarket air filters for air purifiers, humidifiers, and deodorizers, including those manufactured by IQAir. See Compl., Doc. No. 1-1, ¶ 6.

New Angle sued IQAir in New Hampshire Superior Court in March 2022. See Notice of Removal, Doc. No. 1. IQAir then removed the case to federal court and invoked the court's diversity of citizenship jurisdiction. See id. ¶ 5-7. New Angle's core complaint is that IQAir filed baseless trademark infringement claims against it with the online retailers Amazon and eBay, who then delisted several New Angle products, yielding hundreds of thousands of dollars in lost sales. See Compl., Doc. No. 1-1 ¶ 23. Shortly after New Angle filed its complaint, IQAir filed its own trademark infringement action against New Angle in the Central District of California. See IQAir Compl., Doc. No. 5-2.

IQAir is not registered to do business in New Hampshire, nor has it owned any real property or maintained a bank account in the state. See Hammes Decl., Doc. No. 5-3, ¶¶ 2-3, 5. In 2021, IQAir's annual in-state sales were slightly more than $200,000, or 0.41% of its national sales. See id. ¶ 4.

2

IQAir has moved to dismiss or transfer New Angle's claims under Federal Rule of Civil Procedure 12(b)(2) and 28 U.S.C. § 1406(a).

## II.   STANDARD OF REVIEW

When a defendant contests personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that a basis for jurisdiction exists. Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 147 (1st Cir. 2021). Where, as here, the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, the court applies the prima facie standard. See id. Under this standard, the plaintiff must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). In conducting this analysis, I take the evidence offered by the plaintiff as true and construe it in the light most favorable to the plaintiff's jurisdictional claim. Nandjou, 985 F.3d at 147–48. I can also consider facts offered by the defendant when they are uncontradicted. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).

## III.   ANALYSIS

When assessing personal jurisdiction in a diversity case, a federal court "is the functional equivalent of a state court sitting in the forum state." Baskin-Robbins, 825 F.3d at 34 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). The court must determine whether an exercise of

3

jurisdiction is proper under both the forum's long-arm statute and the Constitution's due process clause. C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014). Because New Hampshire's long-arm statute is coextensive with the due process clause, I need only consider whether exercising personal jurisdiction would satisfy due process. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999).[2]

Due process requires that the defendant "have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (cleaned up). When the plaintiff asserts specific jurisdiction, due process requires that (1) her "claim directly arises out of or relates to the defendant's forum-state activities"; (2) "the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state"; and (3) "the exercise of jurisdiction is ultimately reasonable." Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018). IQAir disputes all three elements,

---

[2] New Angle does not pursue a general jurisdiction theory of personal jurisdiction, so I will only discuss whether the court has specific jurisdiction. See Mojtabai v. Mojtabai, 4 F.4th 77, 86 (1st Cir. 2021).

but I need only discuss the first two. See O'Neil v. Somatics, LLC, 2021 DNH 151, 2021 WL 4395115, at *5–6 (D.N.H. Sept. 24, 2021).

IQAir argues that New Angle cannot satisfy the relatedness requirement because it has had no contacts with New Hampshire that have any bearing on New Angle's claims. New Angle responds by claiming that it has sufficiently alleged relatedness because it has felt the effects of IQAir's tortious conduct in New Hampshire. But the in-state effects of out-of-state conduct cannot, standing alone, satisfy the relatedness requirement. See Vapotherm v. Santiago, 38 F.4th 252, 261 (1st Cir. 2022).

New Angle's citation to Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1 (1st Cir. 2009), does not assist it. The facts here are a far cry from the "formidable array of [in-state] connections" that the plaintiff identified in Astro-Med. See id. at 10. There, a California defendant hired a Rhode Island plaintiff's employee, allegedly violating non-competition and trade-secrets clauses in the employee's contract. See id. at 6–7. The defendant had "full knowledge" of the contract's Rhode Island forum-selection and choice-of-law clause but hired the employee all the same. Id. at 12. The court stressed that "the breach of contract — the actual injury — . . . occurred in" Rhode Island, even though the employee was recruited out-of-state. See id. at 10. New Angle cannot point to any similar facts in this case.

New Angle also mistakenly analogizes this case to an out-of-circuit case, Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063 (10th Cir. 2008). In Dudnikov, the plaintiffs planned to use eBay to auction off prints located in Colorado that the defendants believed infringed their copyrights. Id. at 1067. The defendants complained to eBay, who then canceled the auction. Id. The Tenth Circuit held that the defendants' clear goal was to cancel the plaintiffs' Colorado-based auction. Id. at 1075. And since the defendants' "express aim" was to "halt a Colorado-based sale by a Colorado resident," Colorado had jurisdiction over the plaintiffs' claim. Id. at 1075–76. The Tenth Circuit has since explained that Dudnikov's reasoning is limited to cases when there is a "particular sale or transaction" in the forum state that "was disrupted by [the defendant's out-of-state] actions." See C5 Med. Werks, LLC v. CeramTec GMBH, 937 F.3d 1319, 1324 (10th Cir. 2019). Nothing like that happened here. Accordingly, Dudnikov is a very different case that does not affect my analysis.

Although failing to establish relatedness is fatal to New Angle's argument, IQAir is also entitled to dismissal because New Angle has not satisfied the purposeful availment prong of the specific jurisdiction test. To meet this requirement, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and

making the defendant's involuntary presence before the state's courts foreseeable." Astro-Med, 591 F.3d at 10. "The two key focal points of this concept are voluntariness and foreseeability." Id. The relevant "contacts must be voluntary and not based on the unilateral actions of another party." Id. "And, the defendant's contacts must be such that he could 'reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

    New Angle argues that IQAir purposefully availed itself of the privilege of conducting business in New Hampshire because it sent a cease-and-desist letter to New Angle in New Hampshire, engaged in pre-suit negotiations with New Angle's New Hampshire-based attorneys, and sent multiple claims to New Angle through the company's website domain registrar. I am unpersuaded by New Angle's argument. It may well be true that a pattern of multiple cease-and-desist letters and extensive pre-suit negotiations directed at the plaintiff in the forum state can suffice to support a finding of purposeful availment in certain circumstances. See, e.g., PerDiemCo LLC, 997 F.3d 1147, 1156 (Fed. Cir. 2021). Here, however, New Angle alleges that IQAir sent only a single cease-and-desist letter to its New Hampshire offices and engaged in only a limited number of communications with its New Hampshire attorneys. Wang Aff. Doc. No. 11-1 ¶¶ 22–23. Further, although New Angle alleges that it threatened to sue IQAir in New Hampshire during

7

these negotiations, it does not suggest that IQAir ever agreed to submit to the jurisdiction of New Hampshire's courts. Accordingly, this case is more similar to other cases in which courts have refused to base a finding of personal jurisdiction on the sending of a -and-desist letter. See, e.g., Kehm Oil Company v. Texaco, Inc., 537 F.3d 290, 301 (3rd Cir. 2008) (purposeful availment); see also Red Wing Shoe Co. v. Hockerson-Halberstadt, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998) ("principles of fairness"); see Sabanek Assoc., Inc. v. Navarro, 1995 WL 869382 *3 (D.N.H. 1995); see also Nova Biomedical Corp. v. Moller, 629 F.2d 190, 197 (1st Cir. 1980) ("The mailing of an infringement notice standing alone has rarely been deemed sufficient to satisfy the constitutional standard" (dictum)).

## IV.   CONCLUSION

For the reasons set forth in this Memorandum and Order, I determine that the court lacks personal jurisdiction over IQAir. IQAir's Motion to Dismiss or Transfer (Doc. No. 5) is granted to the extent that the case shall be transferred to the Central District of California.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

September 22, 2022

cc:   Counsel of Record